UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-CV-24393-UNGARO/TORRES

STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
)
    Plaintiff/Counter-Defendant, )
)
v. )
)
B & A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL )
CENTER CORP., and ERNESTO ALVAREZ )
VELASCO, )
)
    Defendants, )
)
B & A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL )
CENTER CORP., )
)
    Counter-Plaintiff. )
_____)

## B & A DIAGNOSTIC, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

    Defendant, B & A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL CENTER CORP. ("B & A"), files its Answer and Affirmative Defenses to the Amended Complaint filed by Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm"), and B & A's Counterclaim, and states as follows:

    1.    B & A is without knowledge as to what State Farm says it claims in Paragraph 1 of the Amended Complaint. B & A denies that the subject X-ray services were unlawfully rendered and demands strict proof thereof. B & A admits that B & A rendered services to State Farm's insured for over $469,000.00 and that State Farm has failed to pay for the majority of B & A's subject services.

Case 1:13-cv-24393-UU   Document 48   Entered on FLSD Docket 05/12/2014   Page 2 of 20

CASE NO. 13-CV-24393-UNGARO/TORRES

2. B & A denies the allegations set forth in Paragraph 2 of the Amended Complaint that B & A's X-ray scans were not properly performed and demands strict proof thereof.

3. B & A admits the allegations set forth in Paragraph 3 through 7 of the Amended Complaint.

4. As to the allegations set forth in Paragraph 8 of the Amended Complaint, B & A admits that State Farm is seeking to recover payment and avoid making additional payment due for B & A's services for which B & A has filed its Counterclaim set forth below. B & A denies that it failed to meet its obligations or comply with Florida law and demands strict proof thereof.

5. As to the allegations set forth in Paragraph 9 of the Amended Complaint, B & A admits that State Farm is a foreign corporation. B & A is without knowledge as to the remaining allegations in paragraph 9 and demands strict proof thereof.

6. B & A admits the allegations set forth in Paragraphs 10 through 17 of the Amended Complaint.

7. As to the allegations set forth in Paragraphs 18 and 19, B & A denies the jurisdictional allegations because each of the hundreds of insureds have been billed for amounts under Florida's small claims maximum jurisdictional amount of $5,000.00 which State Farm has wrongfully aggregated in this cause. The value of each X-ray taken and the beneficial use by each of State Farm's insureds of each X-ray involves separate insureds and each of their separate individual medical treatments based upon diagnoses following each insured's physician's use of each X-ray. State Farm was billed approximately $300.00 for each of the subject X-rays.

8. B & A admits that Florida's Motor Vehicle No-Fault Law requires $10,000.00 in mandatory coverage for Florida automobile policy holders, but except as so admitted denies the allegations in paragraph 20.

9. B & A admits that Medical Payments Coverage is a coverage that provides additional benefits to the insured, but except as so admitted denies the allegations in paragraph 21.

10. B & A admits Florida Statute §627.736 (1)(a) as cited, but except as so admitted denies the allegations in paragraph 22.

11. B & A admits Florida Statute §627.736 (5)(b)(1)(b) as cited, but except as so admitted denies the allegations in paragraph 23.

12. B & A admits Florida Statute §627.732 (11) as cited, but except as so admitted denies the allegations in paragraph 24.

13. B & A admits Florida Statute §627.736 (5)(d) as cited, but except as so admitted denies the allegations in paragraph 25.

14. B & A admits Florida Statute §627.736 (5)(b)(1)(d) as cited, but except as so admitted denies the allegations in paragraph 26.

15. B & A admits Florida Statute §627.736(5)(e) as cited, but except as so admitted denies the allegations in paragraph 27.

16. B & A admits Florida Statute §627.736(5)(e)(4) as cited, but except as so admitted denies the allegations in paragraph 28.

17. B & A admits Florida Statute §468.3003 states that "It is declared to be the policy of the state that the health and safety of the people must be protected against the harmful effects of excessive and improper exposure to ionizing radiation. Such protection can in some major measure be accomplished by requiring adequate training and experience of persons who use radiation and radiation-emitting equipment in each particular case under the specific direction of licensed practitioners. It is the purpose of this part to establish standards of education, training, and experience and to require the examination and certification of users of radiation and radiation-

emitting equipment", but denies existence of Florida Statute §468.003 and corresponding allegations made in paragraph 29.

18. B & A admits Florida Statute §468.302(1) as cited, but except as so admitted denies the allegations in paragraph 30.

19. B & A admits Florida Statute §468.302(4) as cited, but except as so admitted denies the allegations in paragraph 31.

20. B & A admits Florida Statute §468.301(3) as cited, but except as so admitted denies the allegations in paragraph 32.

21. B & A admits Florida Statute §468.301(6) as cited, but except as so admitted denies the allegations in paragraph 33.

22. B & A admits Florida Statute §468.301(15) as cited, but except as so admitted denies the allegations in paragraph 34.

23. B & A admits Florida Statute §468.301(11) as cited, but except as so admitted denies the allegations in paragraph 35.

24. B & A denies paragraph 36 as being subject to interpretation.

25. B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

26. B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

27. B & A denies the allegations in paragraph 39.

28. B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

29. As to the allegations set forth in paragraphs 41 through 48, B & A admits that the statutes and administrative codes cited set forth various regulations. B & A is without knowledge as to Plaintiff's use being in context with the statutes and codes and demands strict proof thereof.

30. B & A denies the allegations in paragraph 49 as being subject to interpretation.

31. B & A denies the allegations in paragraph 50.

32. B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

33. B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 as F.S. §400.9905(1) defines the use of the word "agency."

34. B & A admits Florida Statute §400.9935(1)(d) reads in pertinent part "The medical director or the clinic director shall: (d) Ensure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided, but except as so admitted denies the allegations in paragraph 53.

35. B & A denies the allegations in paragraph 54.

36. B & A admits the existence of the statutes cited in paragraphs 55 through 59 and implication in 57, but is without knowledge as to Plaintiff's interpretation of same and demands strict proof as to the relevance of said statutes in this cause.

37. B & A admits the existence of the exhibit referred to in paragraph 60 and the content of said paragraph to the extent it is in accordance with said exhibit.

38. B & A admits that Ernesto Alvarez Velasco worked at B & A but denies that he was employed by B & A as alleged in paragraph 61.

39. B & A admits that Alvarez performed X-ray scans on patients as alleged in paragraphs 62 and 63, but except as so admitted denies knowledge or information sufficient for a

belief as to whether he performed X-ray scans on all claims that are referenced in exhibit to Amended Complaint.

40. B & A admits that Ernesto Alvarez Velasco signed the Disclosure and Acknowledgment Form pertaining to the X-ray scans he performed, but except as so admitted denies the allegations in paragraph 64.

41. B & A denies the allegations made in paragraph 65.

42. B & A denies the allegations made in paragraph 66.

43. B & A denies the allegations made in paragraph 67.

44. B & A denies the allegations made in paragraph 68 which calls for interpretation.

45. B & A denies the allegations made in paragraph 69 in its entirety.

46. B & A denies the allegations made in paragraph 70 which imply that Alvarez was insulated from oversight and is without knowledge as to what Plaintiff claims the website link states.

47. B & A denies the allegations made in paragraphs 71 through 74 and demands strict proof thereof.

48. B & A denies the allegations made in paragraphs 75 and 76 that Ortiz was employed by B & A, but acknowledges that he did provide services for B & A.

49. B & A admits the allegations in paragraphs 77 and 93; is without knowledge as to the allegations in paragraphs 78, 79, 80, 82, 83, 87 through 89; and denies paragraphs 81, 84, 85, 86 and 90 through 94 and demand strict proof thereof.

50. B & A admits submitting CMS-1500 forms to State Farm for services rendered, but except as so admitted denies the allegations in paragraph 95.

51. B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 96 and 97.

52.  B & A denies the allegations in paragraph 98 in its entirety.

53.  B & A denies the allegations in paragraph 99 in its entirety.

54.  B & A denies the allegation in paragraphs 100 through 103 in their entirety.

55.  B & A denies the allegations in paragraphs 104 and 105 and does not have knowledge or information sufficient to form a belief as to the truth of the allegations.

56.  B & A denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106.

57.  B & A denies the allegations in paragraph 107.

58.  B & A responds to the allegations set forth in paragraph 108 as previously responded to.

59.  B & A denies the allegations in paragraphs 109 through 115 and demands strict proof of.

60.  B & A responded to the allegations in paragraph 116 as previously responded to.

61.  B & A denies the allegations in paragraphs 117 through 123 and demands strict proof thereof.

## FIRST DEFENSE

62.  Plaintiff issued payments to B & A, for B & A's professional services, which B & A accepted. Plaintiff has knowingly waived the right to recover any and all amounts paid to B & A as set forth in its Amended Complaint.  Further, Plaintiff knew and should have known the status of Alvarez' license with the State of Florida and the manner of supervision of Ortiz and accepted the benefits of their services for which Plaintiff was reasonably charged pursuant to Florida law.

## SECOND DEFENSE

63.  Plaintiff is estopped to deny that Plaintiff made payments to B & A for services

rendered and that Plaintiff altered its position by seeking reimbursement of same, and in other respects, after B & A's good-faith reliance on misleading representations from Plaintiff that payment for B & A's services would be made which has damaged B & A due to Plaintiff's failure to pay for B & A's services.

### THIRD DEFENSE

64. The Florida Department of Health acknowledged on October 20, 2010 receipt of Alvarez's application, but unbeknownst to Alvarez or B & A, temporarily rescinded Alvarez' certification due to Alvarez' mere innocent error of not signing the check for the application fee in the miniscule amount of $45.00. State Farm has unjustly sought to defraud B & A out of hundreds of thousands of dollars due to this immaterial mistake by Alvarez forgetting to sign his minuscule $45.00 check for the state's application fee.

### FOURTH DEFENSE

65. Mr. Alvarez was in "substantial compliance" with the substantive requirements of Chapter 468 of the Florida Statutes pertaining to certification of Radiological Personnel. Mr. Alvarez was qualified to take x-rays by virtue of his qualifications as holder of a certificate from American Registry of Radiologic Technologists ("ARRT) and as a graduate of Florida National College with an Associate of Science in Radiologic Technology. Further, the State of Florida conferred a certification to Mr. Alvarez by "endorsement" and he was not required to take any examinations in accordance with *Fla. Stat.* §468.306 and *Fla. Stat.* §468.3065. Plaintiff's conduct in seeking to take advantage of the immaterial unsigned $45.00 check constitutes fraud coupled with conspiracy to commit fraud.

### FIFTH DEFENSE

66. On or about October 2, 2013, B & A Diagnostic, Inc., through its counsel of record,

entered into a settlement agreement with State Farm Mutual Automobile Insurance Company in the case of B & A Diagnostic, Inc. (a/a/o Jorge Gonzalez) v. State Farm Mutual Auto Insurance Company: in the County Court of Miami-Dade County, Florida; 10-11755 SP 25 (02). As part of the settlement agreement, B & A agreed to dismiss with prejudice all of its cases against State Farm that were handled by its counsel therein wherein, Ernesto Alvarez Velasco, performed X-ray scans prior to Mr. Alvarez resolving the unsigned $45.00 check issue with the Florida Department of Health. State Farm Mutual Insurance Company provided B & A with a list of all the cases that State Farm identified that met this criteria and B & A through counsel dismissed said cases with prejudice. In addition, as part of the settlement, B & A agreed to dismiss with prejudice any other cases that posed the same issue that may also be pending, or subsequently demanded, discovered or filed. Accordingly, Plaintiff's claims are barred as a result of accord and satisfaction and ratification.

## SIXTH DEFENSE

67.    Defendant has been contacted by attorneys for the Plaintiff regarding dismissal of cases subsequent to the parties' October 2, 2013 agreement which presents the same issue brought forth in Plaintiffs Amended Complaint. B & A has promptly filed voluntary dismissals in those cases and counsel on both sides has agreed to each party bearing their own fees and costs upon dismissal and no additional recovery has been sought. Accordingly, Plaintiff's claims are barred by res judicata.

## SEVENTH DEFENSE

68.    As of April 1, 2009, Mr. Alvarez met all criteria required by the Department of Health for certification by endorsement. Accordingly, the Amended Complaint fails to state a cause of action because Plaintiff has not sustained any damages as a result of any X-rays conducted by Mr. Alvarez.

### EIGHTH DEFENSE

69. Plaintiff has unclean hands as its course of dealing with B & A involving issuing payments to B & A, allowing B & A to accept and deposit payments, and further entering into an agreement with B & A that did not involve reimbursements of any kind, and, therefore, Plaintiff should be estopped from seeking the relief sought in the Amended Complaint which Plaintiff has voluntarily waived. Accordingly, Plaintiff's claims fail for lack of consideration.

### NINTH DEFENSE

70. Plaintiff is barred from recovery due to the doctrine of laches in that it has unreasonably delayed in asserting its claims, and as such has prejudiced B & A.

### TENTH DEFENSE

71. Mr. Alvarez performed the "technical component" of Plaintiff's services not the "professional component" of the services billed by the B & A. Because each patient insured by Plaintiff received the benefit of B & A's services by qualified technicians and practitioners for which Plaintiff has not been billed by third parties for the necessity of its insured having the same procedures repeated, Plaintiff's claims fail for lack of consideration and the nonexistence of any losses whatsoever.

### ELEVENTH DEFENSE

72. Plaintiff's count for unjust enrichment in its Amended Complaint fails to sate a cause of action because there is no independent remedy of unjust enrichment. *Challenge Air Transport, Inc. v. Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 S. 2d. 323 (Fla. 3d DCA 1988). Further, the equitable remedy is not available in this cause due to the parties' contractual relationship. Plaintiff's declaratory relief count also fails to state a valid cause of action due to the existence of the parties' contractual relationship and statutory obligations.

### TWELFTH DEFENSE

73.     Under the principles of CPT coding the "professional component" of the x-ray services performed by the B & A is "compensable" as a distinct and separate procedure, for which B & A would be entitled to setoff if Plaintiff had any actual losses.

### THIRTEENTH DEFENSE

74.     Plaintiff's claims are barred in whole or in part by Plaintiff's failure to mitigate its damages.

### COUNTERCLAIM

Defendant, B & A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL CENTER CORP. ("B & A"), files its Counterclaim against Plaintiff ("State Farm") and states as follows:

### **JURISDICTION AND VENUE**

75.     This is an action for damages in excess $75,000.00, exclusive of interest, costs, and attorneys' fees and costs.

76.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as it is arises from the same facts and transactions related to the allegations of State Farm's Amended Complaint and therefore the claims set forth below are properly before the Court as a pleaded Counterclaim. In the event the Court concludes that the Court lacks amount in controversy jurisdiction over the Amended Complaint, B & A acknowledges that jurisdiction would not lie over the Counterclaim as well.

77.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because a substantial part of the events or omission giving rise to the claims occurred within the Southern District of Florida.

## PARTIES

78. Undersigned counsel for B & A has reviewed pleadings filed in other cases against Plaintiff and herein repeats what other attorneys in Florida have stated about State Farm. Throughout the United States, State Farm spends over $800 million a year flooding television, radio and print media with advertisements attempting to dupe the American public into believing they are the "Good Neighbor." As shown below, however, the truth could not be further from State Farm's well financed public image. Indeed, State Farm does everything in its power to leverage its policyholder's health care providers to protect the billions of dollars in profits the insurance giant makes in any given year. State Farm's own records show that its illicit claim practices swelled its coffers a staggering $2.5 billion in just one year alone; turning $800 million in net income during 2011 into a $3.2 billion profit in 2012. There are few if any legitimate businesses that can generate these types of earnings, let alone increase already astronomical profits four times over in just a year's time. State Farm is no exception as it has proudly watched its dishonest business practices increase the monetary value of the company and lead to its net worth soaring over the past years to an incredible $65 billion.

79. The perverse profits and disproportionate net worth State Farm has reported is not due to superior services or any factor that could be considered neighborly. To the contrary, this insurance behemoth has put into place a calculated, methodical and purposeful strategy to cheat medical providers and willfully ignore the clear and unambiguous language of state personal injury protection ("PIP") statutes that are meant to streamline payments.

80. State Farm effectuates its scheme through a series of practices in it claims adjustment process that violate the law, including improperly manipulating claims software to circumvent input by licensed adjusters and unlawfully allowing non-licensed individuals to make final decisions on submitted claims. At minimum, the effect of these secretive acts are to deliberately underpay and/or

slow pay providers (which only increases State Farm's profits) and force these institutions and individuals into costly litigation simply to get the money rightfully earned, but withheld, for the treatment of State Farm's insureds. Not even the threat of paying providers' litigation costs and fees has deterred State Farm from this cold cash management scheme which has allowed State Farm to become a profit machine – not from the business of insurance, but rather from its investment strategies.

81. Not happy enough with squeezing providers' payments to manage its own cash flow, however, State Farm also has a notorious litigious strategy toward any provider, like B & A that has a history of providing quality service to policy holders, which in turns drives up the costs of settling automobile accidents and cuts into profits as insurance companies like State Farm end up paying more in settlement to dispose of meritorious suits or ultimately in adverse judgments, which often lead to bad faith suits against State Farm as its own insureds are forced to sue their "Good Neighbor" because State Farm has refused to settle meritorious cases when it had the chance.

82. In this case, State Farm has not deviated from its well-worn playbook having refused to pay B & A hundreds of thousands of dollars for prescribed tests and treatment, and then taking the offense by denying that such amounts are even owed due to contrived claims of insurance fraud. State Farm should be held fully accountable for its wrongful conduct and forced by this Court to abandon its illegal claims practices, which adversely affects not only B & A but tens of thousands of other medical providers throughout Florida and the United States, as well as State Farm's insureds all of which is a far cry from being a "Good Neighbor."

## COUNT I
## FRAUD

83. B & A realleges paragraphs 75 through 82 as if fully set forth herein.

84.     In each of the claims set forth in Exhibits E, F, J and K attached to the Amended Complaint and incorporated herein, State Farm intentionally and knowingly made false representations and/or fraudulent omissions of material fact to B & A by indicating that payments for services rendered under the Florida PIP statute would be paid pursuant to the mandates of Chapter 627, when in fact, State Farm had an undisclosed illicit business practice to systematically underpay such submissions by medical providers.

85.     At the time the representations were made to or omissions withheld from B & A, State Farm knew that they were false and fraudulent.

86.     State Farm made the above-described representations to induce B & A to rely on such representations in the treatment of State Farm's policy holders. Moreover, State Farm has misled Florida insurance consumers into a false sense that State Farm would legally pay for its insureds health care costs arising from automobile accidents. State Farm has engaged in a methodical, relentless campaign to create an image much different from the Good Neighbor with health care providers, whom State Farm bullies, threatens and tries to litigate out of business if they persist in providing quality medical care that State Farm fears will dilute its profits.

87.     B & A not realizing State Farm's ultimate goal, reasonably relied on State Farm's representations/omissions that claims submitted would be paid in accordance with the mandates under the Florida PIP statute, when in fact they were not and State Farm was engaging in a systematic but unknown fraud.

88.     As a direct and proximate result of the above-described misrepresentations, B & A has been damaged in an amount well in excess of $75,000.00 exclusive of interests and costs.

WHEREFORE, Counter-Plaintiff, B & A DIAGNOSTIC, INC. d/b/a OASIS MEDICAL CENTER CORP., demands judgment against Counter-Defendant STATE FARM MUTUAL

CASE NO. 13-CV-24393-UNGARO/TORRES

AUTOMOBILE INSURANCE COMPANY, for compensatory damages, costs, interest and such further relief as the Court deems proper.

## COUNT II

### BREACH OF CONTRACT

89. B & A realleges paragraphs 75 through 82 as if fully set forth herein.

90. In its Amended Complaint, State Farm seeks reimbursement for amounts paid on claims which are set forth in Exhibits E, F, J. and K attached to State Farm's Amended Complaint, and hereby incorporated hereby by reference.

91. In true classic State Farm bad faith fashion, the insurance giant has attempted to shift the issues of its violation of Florida law concerning its own underpayment on these claims to manufactured allegations of fraud allegedly committed by B & A.

92. Not only has B & A not committed any fraud, but State Farm has always underpaid the amounts owed on the subject cases, the policies and payments for which are set forth in Exhibits E, F, J and K attached to the Amended Complaint.

93. State Farm's underpayment is strictly in-line with its standard illicit business practices set forth above and was and remains a premeditated attempt to steal services from B & A.

94. State Farm issued insurance contracts covering each of the claims set forth in Exhibit A, which provided Personal Injury Protection Benefits, medical and extended medical expense coverage to the named insureds.

95. State Farm was required by law to comply with Florida Statutes §§627.730-627.7405 with respect to payments of the claims at issue.

96. B & A does not have a copy of the policies to attach, but State Farm wrote the policies at issue, is in possession of the policies, is intimately familiar with the terms, conditions, and

15

language of the policies, and is not prejudiced in any way by B & A not having attached the policies to this Counterclaim.

97. Each of the claims set forth in Exhibits E, F, J, and K involve State Farm policy holders who sustained bodily injuries arising out of an accident involving the operation, maintenance or use of a motor vehicle in the State of Florida.

98. The subject policies of insurance were in full force during all relevant times and State Farm had a duty to pay for personal injury protection benefits as a result of the subject motor vehicle accident arising out of the claims set forth in Exhibits E, F, J and K.

99. As a result of injuries sustained in the covered accidents, State Farm policy holders incurred reasonable expenses for medically necessary medical, rehabilitative, nursing, and remedial care and related services and supplies in the amount of set forth in Exhibits, E, F, J, and K which were provided by B & A.

100. Each of the policy holders on the claims set forth in Exhibit A actually or equitably assigned PIP benefits to B & A by written document or by asking B & A to render necessary care and to bill State Farm directly and to agree to be paid directly by State Farm, which amounts to B & A holding the unqualified and irrevocable right to the no-fault benefits at issue.

101. The policy holders at issue and B & A have performed all conditions precedent necessary to entitle B & A as assignee, of the policy holders, to recover benefits as provided by the insurance contracts at issue in Exhibits E, F, J and K.

102. State Farm breached the subject insurance contracts in that it wrongfully denied and failed to fully pay or failed to timely pay for all Personal Injury Protection Benefits and Medical Expense Benefits as promised by State Farm in the insurance contracts at issue and as required by the law that was in effect at the time the subject insurance policies were executed.

103. State Farm breached the subject insurance contracts in that it failed to fully pay and make timely payment of Personal Injury Protection Benefits and Medical Expense Benefits to B & A for care and treatment rendered on the claims set forth in Exhibit E, F, J and K.

104. B & A submitted Health Insurance Claim Forms along with all medical records to State Farm, which failed to make total payment to B & A for Personal Injury Protection Benefits and Medical Expense Benefits.

105. State Farm failed to provide a truthful explanation of benefits to B & A specifying each item that State Farm had reduced, omitted, or declined to pay.

106 State Farm failed to obtain a valid report from a physician or physicians licensed under Florida law as the physician or physicians providing the treatment described above stating that: the treated injuries were not related to the accident at issue; or that the medical treatment provided was medically unnecessary; or that B & A charges for said medical treatment were unreasonable. Indeed, State Farm fails to make any such allegations in its Amended Complaint and must therefore be deemed to have waived such assertions.

107. State Farm's breach of contract by failing to make timely payments of the Personal Injury Protection benefits and Medical Expense Benefits and other required payments has caused B & A to sustain damages and required it to retain the undersigned law firm to enforce State Farm's obligations under the insurance contracts at issue.

108. B & A is entitled to an award of reasonable attorneys' fees and costs pursuant to Florida Statutes § 627.428 and common law.

WHEREFORE, Counter-Plaintiff, B & A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL CENTER CORP., demands judgment against Counter-Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, for personal injury protection benefits, extended medical payment benefits, together with prejudgment interest, costs and attorneys' fees and such further relief as the Court deems proper.

## COUNT III

### DECLATORY JUDGMENT UNDER 28 U.S.C. § 2201

109.  B & A realleges paragraphs 75 through 82 as if fully set forth herein.

110.  This is a cause of action under the Federal Declaratory Judgment Act.

111.  There is an actual case and controversy between B & A and State Farm, as to all claims and charges submitted by B & A to State Farm for No-Fault Benefits for which State Farm has wrongfully underpaid and/or refused payment based on the illicit claims practices set forth in above.

112   There is a bona fide, present, and practical need for a declaration as to whether State Farm's claims practices and payment policies are in violation of Florida Statutes Chapter 626 and/or Chapter 627.

113.  Accordingly, B & A hereby seeks a judgment declaring that State Farm's claims practices and payment policies are in violation of Florida Statutes §§ 627.736, 626.878, 626.9541and/or the Florida Administrative Code 69B-220.201.

114.  B & A also requests that this honorable Court issue an injunction prohibiting State Farm from further illicit use of the claims practices and payment policies set forth herein, which are in violation of Florida Statutes §§ 627.736, 626.878, 626.9541 and/or the Florida Administrative Code 69B-220.201.

WHEREFORE, Counter-Plaintiff, B & A DIAGNOSTIC, INC. n/k/a OASIS MEDICAL CENTER CORP., requests that the Court declare that Counter-Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, must pay for the subject services and that Counter-Defendant violated the above-referenced Statutes and Code and enjoin Counter-Defendant from similar misconduct in the future, plus such further relief as the Court deems proper.

### NOTICE OF INTENT TO SEEK ATTORNEYS' FEES

B & A hereby give notice of their intent to seek attorneys' fees under all applicable statutory provisions.

### JURY DEMAND

B & A hereby demands trial by jury on all claims so triable.

Dated this 12th day of May, 2014.

Respectfully submitted,

By: /s/ Lewis J. Levey
LEWIS J. LEVEY
Fla. Bar No. 628336
Llevey@Leveylaw.com
leveypa@aol.com

By: /s/ Mendy Lieberman
MENDY LIEBERMAN
Fla. Bar No. 93236
mlieberman@Leveylaw.com
LEVEY LIEBERMAN LLP
1688 Meridian Avenue, Suite 900
Miami Beach, Florida 33139
(305) 672-5007 (Telephone)
(305) 672-0470 (Facsimile)
Attorney for Defendant B & A Diagnostic

**Certificate of Service**

I HEREBY CERTIFY that on 12<u>th</u> day of <u>May,</u> 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Akerman, LLP, 222 Lakeview Avenue, Suite 400, West Palm Beach, Florida 33401and and Las Olas Centre II, Suite 1600, 350 East Las Olas Boulevard, Fort Lauderdale, Florida 33301; David I. Spector, Esq., david.spector@akerman.com; and Sandra Lynn Heller, Esq., sandra.heller@akerman.com and B & A Diagnostic, Inc. n/k/a Oasis Medical Center Corp., 8150 South West 8th Street, #118, Miami, Florida 33144.

By: /s/ Mendy Lieberman
MENDY LIEBERMAN
Fla. Bar No. 93236
mlieberman@Leveylaw.com
LEVEY LIEBERMAN LLP
1688 Meridian Avenue, Suite 900
Miami Beach, Florida 33139
(305) 672-5007 (Telephone)
(305) 672-0470 (Facsimile)

Z:\2794\001\ANSAFFDEFANDCOUNTERCLAIM.DOC5/12/2014-8:31