UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 13-CV-24393-UNGARO/OTAZO-REYES

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff,

v.

B&A DIAGNOSTIC, INC. n/k/a OASIS
MEDICAL CENTER CORP., and
ERNESTO ALVAREZ VELASCO,

      Defendants.

_____/

**STATE FARM'S MOTION TO DISMISS B&A DIAGNOSTIC, INC.'S
COUNTERCLAIM OR, IN THE ALTERNATIVE, TO SEVER AND STAY
THE COUNTERCLAIM, AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff/Counter-Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f), and 12(h)(3), files this Motion to Dismiss Defendant/Counter-Plaintiff's, B&A Diagnostic, Inc. n/k/a Oasis Medical Center Corp. ("B&A"), Counterclaim [ECF No. 48] for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, or alternatively, moves the Court to sever and stay the Counterclaim.

**I.    INTRODUCTION**

      B&A, more than five months after this action was commenced and only two months prior to the discovery cutoff in this case, served its initial Counterclaim against State Farm which was admittedly cut-and-pasted from a wholly unrelated matter against State Farm pending in the Middle District of Florida.  *See* ECF No. 48 at ¶ 78 ("Undersigned counsel for B & A has reviewed the pleadings filed in other cases against Plaintiff and herein repeats what other attorneys in Florida have stated about State Farm."); *see also State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, LLC*, 8:13-CV-01932-EAK-TGW (M.D. Fla. April 07, 2014)

(ECF No. 45)[1].  Notably, the Counterclaim here is devoid of any supporting factual allegations. Further, B&A's Counterclaim should be dismissed because it seeks to inject wholly unrelated claims and issues into this litigation.  A District Court in Florida has recently dismissed similar counterclaims, and this Court should do the same here.  *See Allstate Ins. Co. v. Vizcay*, 8:11-CV-804-EAK-EAJ (M.D. Fla. April 12, 2011) (ECF No. 147).  Specifically, the Counterclaim should be dismissed for five reasons.

First, B&A brings this Counterclaim as the alleged assignee of personal injury protection and medical payment benefits ("No-Fault Benefits") from *hundreds* of individuals eligible for insurance under State Farm policies ("State Farm insureds").  Because the hundreds of State Farm insureds would have no standing to assert counterclaims against State Farm in this case, B&A also lacks standing to do so because an assignee stands in the shoes of its assignor.

Second, all claims asserted in State Farm's Amended Complaint will turn entirely on the following two questions: 1) whether the services rendered by Ernesto Alvarez Velasco ("Alvarez"), and billed by B&A, were unlawful because he was not properly certified under Florida law; and 2) whether B&A lawfully employed and supervised Jose Angel Ortiz Maza ("Ortiz").  B&A's Counterclaim, on the other hand, challenges the reasonableness of the amounts paid by State Farm to B&A for over 1,000 individual services rendered to State Farm insureds, and whether the various fee schedules and payment methodologies that State Farm may have considered in determining the amount it paid for each such charge on over 1,000 separate services rendered.  This would require a claim-by-claim and charge-by-charge analysis for all of B&A's charges on over 1,000 claims identified in State Farm's Amended Complaint and

---

[1] B&A's plagiary of the allegations from the *Physicians Group* case is likely the reason that B&A refers to an "Exhibit 'A'" in its Counterclaims without attaching any such exhibit.  *See* ECF No. 48 at ¶¶ 94, 100.  Notably, State Farm moved to dismiss the Counterclaim in the *Physicians Group* litigation and on the date a response to the motion to dismiss was due, *Physicians Group* filed a near identical Counterclaim.  State Farm has again moved to dismiss the *Physicians Group* Counterclaim which motion is now pending.

AKERMAN LLP, 350 EAST LAS OLAS BOULEVARD, SUITE 1600, FORT LAUDERDALE, FLORIDA 33301-2999

incorporated into B&A's Counterclaim.  None of this painstaking analysis is required to fully adjudicate State Farm's causes of action because if the services were unlawfully rendered, no payment was due to B&A at all.

Third, because a determination regarding the reasonableness of each of B&A's charges for each date of service for over 870 State Farm insureds will vary based upon the unique circumstances under which each service was provided to each patient on each day, it is not appropriate for the kind of broad declaratory relief sought by the Counterclaim.

Fourth, the fraud claim should be dismissed because it is based solely upon State Farm's alleged breach of over 870 insurance contracts, and also fails to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

Finally, if the Counterclaim is not dismissed, it should be severed and stayed until the claims asserted in the Amended Complaint are resolved.  A severance and stay is warranted to promote the interests of judicial economy, as well as the interests of the parties, the witnesses and the public in fair and efficient proceedings.

### A.     State Farm's Amended Complaint

State Farm's Amended Complaint alleges that Alvarez and Ortiz, while working at B&A, rendered radiologic services to State Farm insureds that were unlawful.  (ECF No. 47 at ¶65-66, 86, 89).  Because the services and treatments were not lawfully rendered, neither the patients nor State Farm owed B&A payment for these services.  *See* Fla. Stat. § 627.736(5)(b)(1)(b) ("An insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered.").  (*Id*. at ¶ 22-23).  State Farm alleges that the services rendered by B&A, Alvarez and Ortiz, and billed to State Farm by B&A, were unlawful and noncompensable under Florida law.

The Amended Complaint alleges that the services rendered by Alvarez were unlawful because Alvarez lacked the required certification to perform such services under Florida law. [2] (*Id.* at 65-66); *see* the Radiological Personnel Certification Act ("RPCA"), Fla. Stat. §§468.3001 *et. seq.* (mandating that users of radiation and radiation-emitting equipment submit to examination ***and*** obtain proper certification.)   The services rendered by Ortiz were unlawful because: 1) he was not employed by a licensed practitioner and did not work in the office of that licensed practitioner; and 2) he was not directly supervised by a licensed practitioner.  (*Id.* at 86-89); *see* Fla Stat. §§ 468.301(1), 468.302(3)(a); Fla. Admin. Code §64E-3.0052(4).

Therefore, all the claims asserted in State Farm's Amended Complaint are narrowly focused on the issue of whether Alvarez was properly certified and Ortiz was properly employed and supervised, as required by Florida law, and whether such violations of the law renders those services unlawful.  If the services rendered by Alvarez and Ortiz were unlawful, State Farm is entitled to recover from the Defendants all No-Fault Benefits paid to B&A for all services rendered to such patients.  *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) ("If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment." )

Importantly, State Farm's Amended Complaint does not raise:  (1) any issue regarding State Farm insureds that received treatment from anyone other than Alvarez and Ortiz, or (2) any of the countless other issues raised by the Counterclaim that might impact the amounts owed by State Farm, if any at all, for *each* of B&A's charges for *each* date of service rendered to *each* State Farm insured, including whether:  (a) a State Farm policy was in effect when each accident occurred; (b) each patient was eligible for No-Fault Benefits under the relevant State Farm

---

[2] Notably, it is a misdemeanor of the second degree to practice radiologic technology or to perform the duties of a radiologist assistant without holding an active certificate to do so. Fla. Stat. §468.311(1).

policy; (c) the extent to which No-Fault Benefits were available or exhausted; (d) each patient's injuries related to his or her auto accident; (e) each service billed to State Farm by B&A was actually rendered; (f) each service actually rendered on each date was medically necessary; (g) each charge for each date of service was reasonable, regardless of the various fee schedules or payment methodologies that State Farm may have considered in determining the amount it paid for each charge on each date of service; and (h) many other issues or defenses that might exist based on the unique facts and circumstances of every single service for every patient.

## B.     B&A's Counterclaim

On May 12, 2014, B&A filed its Counterclaim, as the alleged assignee of each of the over 870 State Farm insureds, asserting claims for fraud, breach of contract, and declaratory relief, based upon State Farm's alleged failure to pay a "reasonable" charge for each service rendered by B&A on each date of service on over 1,000 services identified by State Farm in its Amended Complaint and incorporated in the Counterclaim by B&A. (Counterclaim, ¶¶ 84, 91-93). Though, as noted below, B&A's counterclaim for breach of contract refers to specific contracts for insurance for which it was assigned benefits, and alleges such contracts are set forth in an "Exhibit 'A'" that is not attached to the Counterclaim. (Counterclaim at ¶¶94, 100). Additionally, the Counterclaim completely fails to allege any factual details regarding the purported fraudulent statements or omissions made by State Farm or the purported payments which B&A alleges were insufficient. B&A simply asserts *ad hominem* attacks on State Farm and then concludes that it failed to sufficiently pay B&A for unspecified services rendered. Indeed, B&A's Counterclaim alleges State Farm made false representations and/or fraudulent omissions of material fact to B&A, but wholly fails to identify any of those purported misrepresentation. There is simply no factual support included in B&A's Counterclaim sufficient

to satisfy the *Iqbal / Twombley* pleading standards and properly give notice to State Farm of the claims B&A now attempts to assert.

Irrespective of the pleading deficiencies in the Counterclaim, it is readily apparent that the extremely narrow factual and legal issues raised in State Farm's Amended Complaint regarding the employment, supervision, and licensure of two individuals who conducted x-ray scans for B&A are far afield from the particularly broad and fact-intensive issues raised (although poorly) in the Counterclaim. In fact, the issues raised in the Counterclaim, at a minimum, will require a claim-by-claim and charge-by-charge analysis to make a factual determination regarding the reasonableness of B&A's charges for each service rendered to over 870 State Farm insureds on each date of over 1,000 independent services, the relevance of any alleged fee schedules and payment methodologies that State Farm may have considered in assessing the reasonableness of each such charge, and countless other issues described above which might arise in determining the potential liability of State Farm for each such charge under the PIP Statute and State Farm's policies. These claim-by-claim analyses will be mooted, however, on all claims that State Farm proves were not lawfully rendered because those claims were not compensable under the PIP Statute.

## II.    ARGUMENT

### A.    Legal Standards

To survive a motion to dismiss, the counterclaim must include sufficient factual details to amount to "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Instead, the counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim for relief

that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While a court, at this stage of the litigation, must consider the allegations contained in the counterclaim as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Federal Rule of Civil Procedure 13(a), a counterclaim is compulsory *only* if it arises from the same transaction or occurrence that is the subject matter of a plaintiff's claim. *U.S. ex rel. Mueller v. Eckerd Corp.* 184 F.R.D. 686, 687 (M.D. Fla. 1999). In determining whether a counterclaim is sufficiently connected to the claims alleged in a complaint, the Eleventh Circuit applies a logical relationship test. *Id.* A logical relationship exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant." *Id.* (citations omitted). In applying this test, Florida's District Courts have held that no logical relationship exists between claims alleging fraudulent medical charges and counterclaims alleging underpayments of bills. *See id.*; *Vizcay*, 8:11-CV-804-EAK-EAJ (M.D. Fla. April 12, 2011) (ECF No. 147).

Moreover, the Court's power to control its own docket also enables it to sever, stay, or dismiss counterclaims. Rule 42 of the Federal Rules of Civil Procedure expressly allows the Court to sever a party's counterclaims "to avoid prejudice, or to expedite and economize." *See State Farm v. Kugler,* 11-cv-80051-DTKH, Order Severing and Staying Counterclaims (Feb. 15, 2012) (attached as Ex. A). It is within the ***inherent*** power of the Court to stay a proceeding "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985). Similarly, the Court has discretion to dismiss a counterclaim if it "unduly complicates" a case. *See S. Co-op Dev. Fund v.*

*Driggers,* 527 F. Supp. 927, 930 (M.D. Fla. 1981) *aff'd sub nom. S. Co-op. Dev. Fund v. Driggers,* 696 F.2d 1347 (11th Cir. 1983); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1420 (3d ed.). Should State Farm prevail in its argument that the services at issue were unlawfully rendered, then State Farm carries the day, and this Court would have no need to consider the individual reimbursements for the x-rays performed by Alvarez and Ortiz.

### B. Other District Courts In Florida Have Dismissed Similar Counterclaims And This Court Should Do The Same Here.

In *Allstate Ins. Co. v. Vizcay,* 8:11-CV-804-EAK-EAJ (M.D. Fla. April 12, 2011) (ECF No. 147), like here, Allstate alleged that the Defendants' medical services were not lawfully rendered under the PIP Statute and sought to recover all No-Fault Benefits paid, as well as a declaration that no further benefits were owed. The *Vizcay* jury recently returned a verdict for Allstate on all counts.

The *Vizcay* defendants filed counterclaims that, like here, sought to challenge *Allstate's* payment decisions on 247 patients, which would have required a claim-by-claim analysis of the unique circumstances and potential defenses for each claim: the *Vizcay* counterclaims were "framed as claims for breach of contract and a declaratory action brought pursuant to 28 U.S.C. § 2201; however, the remedy sought is payment of [No-Fault Benefits], both through the breach of contract claims and through Defendants' request for a declaration of their rights under 247 insurance policies." *See Vizcay,* 8:11-CV-804-EAK-EAJ, (ECF No. 95 at 4).

The *Vizcay* Court adopted and granted Allstate's motion to dismiss, which was based upon the lack of standing to raise these Counterclaims, as well as the lack of connection between its complaint and the counterclaims, and the resulting confusion and distraction that would ensue from the inclusion of these types of collateral claims. *See Vizcay,* 8:11-CV-804-EAK-EAJ, (ECF No. 147) ("This Court finds [Allstate's] motion well-taken and adopts it by reference herein."). The nature of B&A's Counterclaim are nearly identical to those asserted by the *Vizcay*

{29001674;2}

8

defendants. Therefore, State Farm adopts those arguments which formed the basis for the Court's ruling in *Vizcay* as follows.

> a) **B&A Cannot Pursue A Counterclaim In This Suit On Behalf Of 872 Non-Parties**

In *Vizcay*, citing to Federal Rules of Civil Procedure 12(b)(1), (b)(6), and (h)(3), Allstate argued that defendants' counterclaims were "neither an appropriate permissive or compulsory claim pursuant to Rule 13, Federal Rules of Civil Procedure, and should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted." *See Vizcay*, 8:11-CV-804-EAK-EAJ, (ECF No. 95 at 6). Similar to B&A's Counterclaim, Allstate noted that while the *Vizcay* defendants were sued in their individual capacities, they attempted to bring counterclaims "as assignees of benefits of approximately 247 different Allstate insured parties, seeking payment of [No-Fault Benefits] pursuant to 247 separate insurance policies, claiming breach of the insurance contracts, and seeking declarations of their rights (not the insured parties' rights) under the insurance policy."[3] *Id.* By virtue of their purported standing as assignees, the *Vizcay* defendants, like B&A, attempted to assert claims on behalf of hundreds of individuals entirely unrelated to the litigation "in an effort to require many more depositions, interrogatories, motions and other discovery."[4] *Id.* at 7. Allstate successfully argued:

> Those 247 separate people would have no right or standing to file Counterclaims against Allstate in this suit pursuant to Rule 13, Federal Rules of Civil Procedure. If they have no right or standing

---

[3] Notably, B&A does not allege in Count I (Fraud) or Count III (Declaratory Action) that it is the beneficiary of an assignment of benefits. While B&A does allege in a conclusory fashion in Count II that it is the "actual or equitable" assignee of benefits from each of these State Farm insureds, B&A fails to attach or otherwise describe the assignments sufficiently to survive a motion to dismiss.

[4] Indeed, B&A's attempt to exponentially increase the scope of discovery is evident by its request for the deposition of a State Farm representative with the most knowledge regarding: 1. "payments to medical providers in PIP cases in the U.S.A."; 2) "about underwriting PIP cases in Florida"; and 3) "about State Farm's decision to not pay PIP claims in South Florida." The scope of these requests divert even outside the over 1,000 services B&A seeks to challenge in its Counterclaim and concerns potentially hundreds of thousands of cases wholly unrelated to the discreet issues raised in the Amended Complaint. Additionally, it has served discovery in which it attempts to seek information as to payment decisions pertaining to all bills submitted to State Farm by any provider in South Florida, as well requests seeking documents related to PIP claims across the entire United States.

to file such claims, Defendants have no such right or standing as assignees of their benefits under 247 insurance policies. Put another way, since Defendants stand in the shoes of 247 non-parties, then the Counterclaim would only be proper if each insured party could assert a counterclaim in this case.

Consistent with the Court's holding in *Vizcay,* B&A does not have standing to bring the Counterclaim "as the assignee of" 872 separate insurance policies set forth in Exhibits E, F, J and K to the Amended Complaint. *Vizcay,* 8:11-CV-804-EAK-EAJ, (ECF No. 147). As a result, its Counterclaim must be dismissed for lack of subject matter jurisdiction. *See, e.g., Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F. 3d 1229, 1232 (11th Cir. 2008) (explaining that "[b]ecause standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)," *quoting Cone Corp. v. Fla. Dep't of Transp.*, 921 F. 2d 1190, 1203 n. 42 (11th Cir. 1991)); FED. R. CIV. PRO 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### b)   The Counterclaim Here Is Not Compulsory And Should Be Dismissed.

In *Vizcay,* Allstate argued that the clinics' counterclaims were not compulsory because the payment issues raised across 247 different patients did not logically relate to the fraud scheme alleged by Allstate in the *Vizcay* complaint. *Vizcay,* 8:11-CV-804-EAK-EAJ, (ECF No. 95 at 10-11). Allstate argued that its suit was based on a fraud scheme that focused on the business practices of the defendants and, in particular, the "true owners" use of a sham medical director. *Id.* at 3. Specifically, Allstate argued that its action "did not require a claim-by-claim analysis, but instead a global approach regarding the general corporate structure, corporate practices, and licensing compliance" of the defendants. *Id.* at 10. As such, none of the operative facts of the counterclaims in *Vizcay*, which focused exclusively on whether Allstate properly paid bills, arose from the "same operative facts" that Allstate alleged constituted a fraudulent

{29001674;2}

business practice. *Id.* The Court agreed, dismissing the *Vizcay* counterclaims. *Vizcay,* 8:11-CV-804-EAK-EAJ, (ECF No. 147).

Likewise, *United States v. Eckerd Corp.* 184 F.R.D. 686 (M.D. Fla. 1999) is also instructive and warrants dismissal. In *Eckerd,* the Court held that where a defendants counterclaims are "not offshoots of the same controversy between the parties," they do not arise out of the same transaction or occurrence and may be dismissed. *Id.* at 687 (citations omitted). In *Eckerd,* plaintiff alleged that defendant filed "false or fraudulent statements, representations, and claims…for payment of prescriptions that were only partially filled." *Id.* at 687. Similar to B&A's Counterclaim, defendant Eckerd filed a counterclaim based on "'thousands of instances' where [plaintiff] breached applicable contracts with Eckerd's by failing to pay for drugs dispensed to Medicaid member/beneficiaries located in Florida, or by paying Eckerd a lesser amount for prescription drugs than the amount authorized by Florida Medicaid's own rules and regulations." *Id.* The Court dismissed Eckerd's counterclaim holding that it was not compulsory because: (a) the plaintiff's suit was based upon "false or fraudulent statements, representations, and claims" while Eckerd's counterclaim was based upon multiple purported contractual breaches; (2) that the plaintiff's claims were narrow and "although [defendant's] claim [did] involve payment for the filling of prescriptions, it [went] far beyond the narrow issue of fraudulent billing alleged by the [plaintiff]; and (3) "[t]he factual and legal issues share[d] only the fact that they pertain[ed] to prescriptions, beyond this no similarities exist[ed]." *Id.*

Similar to the counterclaims dismissed in both *Vizcay* and *Eckerd,* B&A's Counterclaim is based on entirely different operative facts, transactions, and occurrences, which would exponentially expand the number of claims, witnesses and issues in this case, needlessly multiplying the scope of discovery, including the number of depositions, interrogatories, and document requests, and inevitably leading to more voluminous and complex motion practice and

{29001674;2}

11

a substantially expanded trial.  Like the *Vizcay* case, State Farm's Amended Complaint is narrowly tailored to determine whether B&A lawfully rendered services to State Farm insureds through two individual technicians, and whether those individuals were properly licensed, employed and/or supervised.  Importantly, State Farm's case does not require any claim-by-claim analysis of the reasonableness of B&A's charges for each date of service for each patient, any fee schedules or payment methodologies that State Farm may have considered in arriving at the amount it paid for each charge on each date of service, or the host of other issues and defenses that might be relevant on a claim-by-claim basis to State Farm's potential liability relating to each such charge.  Thus, under B&A's proposed Counterclaim, this Court will be facing over 1,000 mini-trials on each individual service, which is precisely what the Court refused to do in *Vizcay* and *Eckerd*.

Moreover, B&A's Counterclaim is farther afield than the *Vizcay* counterclaims.  In *Vizcay,* the defendants alleged that Allstate's payment denials were specifically (and improperly, in their view) based on the fraud scheme alleged in Allstate's complaint.  The *Vizcay* defendants attempted to connect the counterclaim to the fraud scheme that formed the basis of Allstate's complaint.  Unlike the counterclaim in *Vizcay*, B&A's Counterclaim is wholly unrelated to the licensure, employment or supervision of the two B&A employees whose conduct is the subject of State Farm's narrowly tailored Amended Complaint.  Instead, the Counterclaim here is based upon State Farm's alleged violations of the PIP Statute, purportedly (although difficult to discern as pled) by not paying a reasonable charge for each service on each date for hundreds of State Farm insureds.  Simply put, the issues raised are in no way connected and B&A is confusing apples with oranges.  As such, B&A's Counterclaim should be dismissed because it does not arise from the same transaction or occurrence as alleged in State Farm's Amended Complaint.

AKERMAN LLP, 350 EAST LAS OLAS BOULEVARD, SUITE 1600, FORT LAUDERDALE, FLORIDA 33301-2999

**C.   The Declaratory Judgment Count Is Improper And Should Be Dismissed Because Such Broad-Based Relief Is Not Available For Issues That Require Claim-By-Claim Determinations.**

B&A's declaratory judgment count also improperly asks the Court for an "across-the-board" determination regarding the reasonableness of B&A's charges for each of the 1,000 services rendered on each date of service to the hundreds of independent State Farm insureds. The PIP Statute expressly states that several factors unique to *each* charge may be used in determining reasonableness.  Fla. Stat. § 627.736(5)(a); *see also Geico v. Virtual Imaging Servs., Inc.*, -- So. 3d --, 2013 WL 3332385, slip op. at *7 (Fla. July 3, 2013) (the determination of reasonableness under the PIP Statute "is a fact-dependent inquiry determined by the consideration of various factors.").  However, B&A improperly asks the Court to impose a blanket policy and declare that "State Farm's "illicit claims practices" that the Counterclaim fails to identify are uniformly in violation of Florida law.  (ECF No. 48 at ¶¶ 111-13).  As noted below, courts have repeatedly rejected nearly identical attempts by providers to obtain this kind of across-the-board declaratory relief.

Florida's PIP Statute expressly rejects the notion that a blanket rule governs whether a provider's charges are reasonable.  Florida law requires that State Farm pay "[e]ighty percent of all *reasonable expenses* for medically necessary" services.  Fla. Stat. § 627.736(1)(a) (emphasis added).  In determining the "reasonableness" of a charge, an insurer may consider:  (a) "evidence of usual and customary charges and payments[,]" (b) reimbursement levels in the community[,]" (c) "various federal and state medical fee schedules[,]" and (d) "other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply."   Fla. Stat. § 627.736(5)(a)(1).   These statutory provisions are incorporated into State Farm's insurance policies by operation of law.  *MRI Associates of St. Pete., Inc. v. State Farm Mutual Auto Ins. Co.*, 755 F. Supp. 2d 1205 (M.D. Fla. 2010).

{29001674;2}

13

As a result, courts have repeatedly dismissed declaratory judgment actions seeking nearly *identical* relief to the declaration B&A seeks here.  In *MRI Associates*, an MRI provider sued State Farm for allegedly underpaying for MRI films by "using Florida's statutory PIP fee schedule in determining the amounts to be paid."  755 F. Supp. 2d at 1207.  The plaintiff in *MRI Associates* sought a blanket declaration for all patients "underpaid by any of the [d]efendants based . . . on their unlawful interpretation and/or application" of the PIP Statute.  *Id.* at 1208.  The court ultimately refused to address the appropriateness of State Farm's payments on an across-the-board basis in *MRI Associates*, noting that:

> [a]t bottom, this case is about whether [the d]efendants have paid 80% of the reasonable amount due for a medically necessary bill.  [The p]laintiff constructs a "two methodology" argument contending that [the d]efendants may not use the statutory fee schedule in calculating a reasonable amount unless they first amend their policies to include the fee schedule.  This argument fails because it assumes the amount provided by the fee schedule is not reasonable for every bill, submitted by all medical providers, from every locale.

*Id.*  The court further held that the "[p]laintiff's claims, even for declaratory relief, require proof that the amounts provided in the statutory fee schedule are not reasonable."  *Id.*  Further, "what constitutes a reasonable amount will vary based on many factors specific to the individual claim."  *Id.*  For example, a medical necessity determination is specific to each individual claim.  And, "rates customarily charged may vary widely from community to community throughout the state."  *Id.*  Thus, the court in *MRI Associates* concluded that "[t]he evaluation of a reasonable amount rests on an examination of the various factors on a case-by-case basis and can only be determined by a fact-finder.  And different fact-finders may reach different conclusions from the same facts."  *Id.*  For this reason, the court dismissed the plaintiff's declaratory judgment claim.[5]

---

[5]  Other federal courts have recognized that similar challenges to State Farm's "reasonable" pricing methodologies based on the application of the Medicare Fee Schedule, Medicare's OPPS fee schedule, and the NCCI edits are not appropriate for global class action treatment for the same reasons.  *See, e.g., All Family Clinic of Daytona Beach,*
{29001674;2}

14

In making its decision in *MRI Associates*, the court relied on *State Farm Mut'l Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. 2d DCA 2002). In *Sestile*, the court rejected an attempt to seek an across-the-board declaration that State Farm's alleged use of a database for determining the reasonableness of medical bills violated the PIP Statute. *Sestile*, 821 So. 2d at 1245-46. The *Sestile* court concluded that proper reimbursement for the medical services needed to be determined on a case-by-case basis because "[i]t is not a court's function to determine, across the board, that an insurer's internal method of gauging reasonableness does or does not comply with the statute." *Id.* at 1246. The court also noted that its decision was "consistent with the nature of PIP litigation" because an insured suing an insurer for payment "bears the burden of establishing that the charges are, in fact, reasonable," and therefore across-the-board declaratory relief regarding the propriety of the provider's charges was inappropriate. *Id.*; *see also Cruz v. Union Gen. Ins. Co.,* 586 So. 2d 91 (Fla. 3d DCA 1991) (rejecting PIP declaratory action that would require reasonableness assessments).

Similarly, in *Shenandoah Chiropractic, P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283 (S.D. Fla. 2007), the court dismissed a declaratory judgment for an putative class based on *Sestile*, noting that the plaintiff's request for "a declaratory judgment as to whether or not the insurer's method of determining reasonableness violates the language in the contract" was "exactly the sort of determination that the *Sestile* court held was inappropriate for across-the-board declaratory relief, because the fact finder must, on a case-by-case basis . . . determine whether or not the insurer's evaluation of the bills submitted" was reasonable. *Shenandoah*, 526 F. Supp. 2d at 1285-86.

---

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 280 F.R.D. 688, 693 (S.D. Fla. Mar. 7, 2012); *DWFII Corp. v. State Farm Mut Auto. Ins. Co.*, 271 F.R.D. 676 (S.D. Fla. 2010), *aff'd*, 469 Fed. Appx. 762 (11th Cir. 2012); *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 538 (S.D. Fla. 2010); *aff'd*, 458 Fed. Appx. 793 (11th Cir. 2012)

Here, as in *MRI Associates*, *Sestile*, and *Shenandoah*, the reasonableness of B&A's charges for each service rendered on each date of service for at least 872 individual patients cannot be determined in an "across-the-board" manner but rather, must be examined on a case-by-case, charge-by-charge basis for each patient.  As the court acknowledged in *MRI Associates*, a "[p]laintiff certainly has the right to contest whatever amount the insurer arrives at is not 80% of 'reasonable amount,'" but Florida law grants an insurer "wide latitude in how they make their internal calculation."  *MRI Associates*, 755 F. Supp. 2d at 1210.  Thus, "[a]ny attempt by [defendants] to seek declaratory relief that [an insurer] cannot consider Florida's PIP fee schedule, or any other medical fee schedule, would fail."  *Id.*  Accordingly, B&A's declaratory judgment claim, which seeks the same type of universal ruling as those rejected in *MRI Associates*, *Sestile*, and *Shenandoah* also fails here.

### D.   The Fraud Claim Should Be Dismissed Because It Is Not Independent Of The Breach Of Contract Claim.

The fraud claim should be dismissed because it merely duplicates the breach-of-contract cause of action.  Although the Florida Supreme Court in *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.* recently limited the economic loss rule to products liability actions, *Tiara Condominium* "does not undermine Florida's contract law or provide for an expansion in viable tort claims."  110 So. 3d 399, 408. (Fla. 2013) (Pariente, J, concurring).  Rather, a party raising a fraud claim must show that "the tort is independent of any breach of contract claim."  *Id.* (citing *Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.,* 482 So. 2d 518, 519 (Fla. 3d DCA 1986).  *Electronic Security* is instructive on this point.  In *Electronic Security*, the plaintiffs brought a breach-of-contract claim and several tort claims, all based on the same set of operative facts, namely that that the plaintiff entered into a contract with defendant Southern Bell to appear in a directory, but the advertisement never ran.  *Electronic Security*, 482 So. 2d at 519.  The trial court dismissed the

{29001674;2}

tort claims for failure to state a claim, and plaintiff appealed.  The Third District Court of Appeal affirmed, explaining that "a breach of contract, alone, cannot constitute a cause of action in tort." *Id.* (citing *Douglas v. Braman Porsche Audi, Inc.,* 451 So. 2d 1038 (Fla. 3d DCA 1984); *Belford Trucking Co. v. Zagar,* 243 So. 2d 646 (Fla. 4th DCA 1970).)  Rather, "[i]t is only when the breach of contract is attended by some additional conduct" that a plaintiff may also bring tort claims. *Id.*   Like the plaintiffs in *Electronic Security*, B&A's fraud claim cannot overcome that basic threshold.  Here, B&A's fraud claim is expressly predicated on the terms, and purported breach, of underlying insurance contracts for 872 State Farm insureds.  (Counterclaim at ¶84).  Because their fraud claim is nothing more than a breach-of-contract claim in disguise, it should be dismissed.

### E.     B&A's Fraud Claim Should Be Dismissed Because It Fails To Plead Fraud With Particularity.

B&A's fraud claim should also be dismissed because it does not allege fraud with sufficient particularity.  To state a claim for fraud, the Counterclaim must allege:  "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).  Additionally, Rule 9(b) particularity requirements must be met.  Fed. R. Civ. P. 9(b).  Specifically, allegations must include:  (1) the precise misrepresentations made; (2) the time, place and person responsible for these; (3) the content and manner in which the misrepresentations misled the plaintiff; and (4) what defendants gained by the fraud. *Inman v. Am. Paramount Financial*, 517 Fed. Appx. 744, 748 (11th Cir. 2013) (citing *Brooks v. Blue Shield of Florida, Inc.*, 116 F. 3d 1364, 1371 (11th Cir. 1997)).

B&A's Counterclaim falls woefully short of pleading any particularity regarding the alleged fraudulent misrepresentations or omissions.  B&A merely offers conclusory allegations

and recites the elements of the cause of action.  (*See* ECF No. 48 at 83, *et seq.*).  Apart from describing the parties, B&A's allegations are devoid of any facts that support the conclusory allegations that State Farm has made false or fraudulent misrepresentations.  At no point does B&A describe when, if ever, State Farm made any representations to B&A, including the *who, what, where or when* of any such representations, much less that the representations were false. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (affirming dismissal of fraud claim for lack of specifics).  In fact, B&A does not identify a single State Farm insured or a single claim in which State Farm made a purported misrepresentation or fraudulent omission. B&A merely alleges that State Farm indicated that payments for services rendered under the Florida PIP statute would be paid, but that some unidentified "illicit business practice" was employed by State Farm to systematically underpay B&A.  (ECF No. 48 at ¶84).   B&A fails to allege with particularity the purported "illicit" business practice, how B&A was underpaid, when B&A was underpaid, or when, how, and who made representations to B&A or how State Farm's purported representation resulted in the underpayment of benefits.  B&A's Counterclaim fails to comply with the lenient pleading requirements of Rule 8, much less the more stringent pleading requirements of Rule 9(b).

  **F.**  **Should The Court Not Dismiss The Counterclaim, It Should Sever And Stay The Counterclaim.**

   In the alternative, if the Court does not dismiss the Counterclaim, the Court should sever and stay the Counterclaim until State Farm's claims are resolved.  Federal Rule 42 expressly allows the Court to sever a party's counterclaims "to avoid prejudice, or to expedite and economize."  *See State Farm v. Kugler*, 11-cv-80051-DTKH, Order Severing and Staying Counterclaims (S.D. Fla. Feb. 15, 2012) (attached hereto as Exhibit "A").  In addition, it is within the ***inherent*** power of the court to stay a proceeding in order "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for

litigants." *Landis,* 299 U.S. at 254; *see also Hendrix*, 776 F.2d at 1495.  Similarly, the court has discretion to dismiss a counterclaim if it "unduly complicates" a case.  *See Driggers,* 527 F. Supp. 927.  In determining whether to stay a proceeding, the court is required to weigh the competing interests and maintain an even balance.  *Landis,* 299 U.S. at 254-255.  A stay is appropriate when it "would promote judicial economy and efficiency."  *NIACCF, Inc. v. Cold Stone Creamery, Inc.,* 2012 WL 1852941, at *2 (S.D. Fla. May 21, 2012) (citations omitted).

Here, a severance and stay is warranted to promote the interests of judicial economy, as well as the interests of the parties, the witnesses and the public in fair and efficient proceedings. As detailed above, the Counterclaim is wholly unrelated to the claims raised in the Amended Complaint.  All claims asserted in the Amended Complaint will turn entirely on the broad question of whether B&A lawfully rendered services to State Farm insureds based on the narrow inquiry into the licensure, employment and/or supervision of two B&A employees.

In contrast, the Counterclaim challenges the reasonableness of B&A's charges for over 1,000 individual services rendered to hundreds of different State Farm insureds, which would require a claim-by-claim and charge-by-charge analysis for the 1,000 services identified in State Farm's Amended Complaint and incorporated into the Counterclaim.  Moreover, litigating the Counterclaim will require consideration of a host of other collateral issues to this case, including, for instance, the particular State Farm policy at issue, whether the patient is eligible for benefits, whether such benefits were available or exhausted, whether each patient's injuries related to an auto accident, whether each service was rendered and medically necessary, whether each charge for each date of service was reasonable, regardless of the various fee schedules or payment methodologies that State Farm may have considered in determining the amount it paid for each charge on each date of service, and a myriad of other issues.

Litigating this Counterclaim now would force the parties and the Court to invest an inordinate amount of resources on issues that are entirely unrelated, and which may largely be mooted if State Farm prevails in this case.  As noted above, if State Farm prevails on any of its claims alleged in the amended complaint, all of the underlying claims which B&A alleges it was underpaid in the Counterclaim would be moot because State Farm would have owed *no payments* on any of these claims.

In any event, without a stay, the parties and the Court would be subject to the unnecessary and enormously burdensome endeavor of wading through discovery and trial regarding the unique features and circumstances of over 1,000 different services billed by B&A that would be necessary to determine the reasonableness of the amount paid by State Farm for each service rendered to each patient on each day.  This would inevitably create unnecessary delays, expenses, and confusion of issues through discovery and trial, which would be unduly prejudicial.  Nor could B&A claim prejudice here, given the hundreds of lawsuits it has already filed addressing these same pricing and payment issues.  Accordingly, if the Counterclaim is not outright dismissed, it should be severed and stayed to promote the interest of judicial economy, as well as the interest of the parties, the witnesses, and the public in fair and efficient proceedings.

WHEREFORE, Plaintiff/Counter-Defendant, State Farm Mutual Automobile Insurance Company respectfully requests that this Court enter an order dismissing the Counterclaim filed by B&A or, in the alternative, severing and staying the Counterclaim pending resolution of State Farm's amended complaint and any other relief the Court deems just and proper.

Dated: June 9th, 2014                Respectfully submitted,

                                     /s/ Sandra L. Heller
                                     David I. Spector (Florida Bar No. 086540)
                                     E-mail:  david.spector@akerman.com
                                     Sandra L. Heller (Florida Bar No. 037055)
                                     E-mail:  sandra.heller@akerman.com
                                     **AKERMAN LLP**
                                     Las Olas Centre II, Suite 1600
                                     350 East Las Olas Boulevard
                                     Fort Lauderdale, Florida 33301-2999
                                     Telephone:  954.463.2700
                                     Facsimile:  954.463.2224
                                     *Attorneys for Plaintiff, State Farm Mutual*
                                     *Automobile Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that on June 9th, 2014, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record identified on the Service List via transmission of Notices of

Electronic Filing generated by CM/ECF.

                                     /s/Sandra L. Heller
                                     Sandra L. Heller (Florida Bar No. 037055)


## SERVICE LIST

Lewis J. Levey, Esquire                         Marshal A. Adams, Esquire
Llevey@leveylaw.com                             maa@lubellrosen.com
Mendy Lieberman, Esquire                        Adi Amit, Esquire
mlieberman@leveylaw.com                         adi@lubellrosen.com
**LEVEY LIEBERMAN LLP**                         **LUBELL & ROSEN, LLC**
1688 Meridian Avenue, Suite 900                 200 S. Andrews Avenue, Suite 900
Miami Beach, Florida 33139                      Fort Lauderdale, Florida  33301
Telephone: (305) 672-5007                       Telephone:  (954) 880-9500
Facsimile: (305) 672-0470                       Facsimile:   (954) 755-2993
*Attorneys for Defendants*                      *Attorneys for Deponent/Witness*

{29001674;2}